In re Estate of Freda Schilling, Deceased.
Charles P. R. Macaulay, Appellant, v. Rush B. Johnson
et al., Appellees.

Gen. No. 41,062.

Heard in the second division of this court for the first district at the December term, 1939. Opinion filed February 23, 1940. Rehearing denied April 1, 1940.

JAMES W. BREEN and WALTER B. PRENDERGAST, both of Chicago, for appellant.

RUSH B. JOHNSON and ROBERT R. MIX, *pro se,* and RUSH B. JOHNSON, W. A. LEOPOLD and ROBERT R. MIX, all of Chicago, for certain appellees.

MR. JUSTICE FRIEND delivered the opinion of the court.

Charles P. R. Macaulay filed a claim in the probate court against the estate of Freda Schilling, deceased, based upon a judgment for $11,000 obtained on a note for $10,000, plus $1,000 attorney's fees. The claim was denied in the probate court and upon appeal to the circuit court a full hearing was had and the claim again denied. Macaulay appeals.

Briefly set forth the facts disclose that Freda Schilling, a widow, had an undivided interest in real estate

at 2444 N. Clark street, Chicago. Her interest was sold for a nominal amount at a judgment sale, and pursuant thereto a bailiff's deed was issued to Curtis J. Hooper. It appears that Mrs. Schilling then gave Macaulay a judgment note for $10,000, and according to his testimony had made an agreement with him to institute proceedings for leave to redeem from the sale to Hooper. Macaulay confessed judgment on the note, adding $1,000 as his attorney's fee. Afterward, by virtue of proceedings in the circuit court he was allowed to and did redeem the property from the bailiff's sale and deed, which was construed as a certificate of sale. After Mrs. Schilling's death he filed his claim on September 15, 1934, based upon judgment dated October 7, 1929, entered in the circuit court in his favor against Freda Schilling, in the amount of $11,000, which included $1,000 attorney's fees. On behalf of respondents there was introduced in evidence exhibit No. 24, being an interlocutory decree of the circuit court entered April 6, 1938, *nunc pro tunc* as of February 9, 1938, finding Macaulay to have acquired the right, title and interest of Freda Schilling to the property in question, and that he "holds the same in trust for heirs of the deceased, subject to payment of amount of money justly due Macaulay, and to payment of claims already allowed against deceased's estate, administration of said estate, and costs and expenses thereof." In said interlocutory decree it is further found that he [Macaulay] claimed that there was "due him for services in recovering interest of deceased, $3,000 and $200 for his attorney's fees, $1,000 and upwards is due attorneys Callahan and Callahan, and there is due him divers moneys advanced for costs, redemption, other expenses," pertaining to the procuring of the decree in the circuit court. At the conclusion of a full hearing before the circuit court in connection with the appeal from the probate court in this proceeding, which is evidenced by a record of 116 pages

and 36 exhibits, the court gave an oral opinion, from which the following excerpts are taken: "It is very clear that the whole transaction was conceived in a scheme contrary to public policy, what the courts could deem to be fraud. . . . He [Macaulay] was not a bona fide creditor of Mrs. Schilling at all. He created a debt so that he could come into court. . . . It would be unconscionable in a court that exercises jurisdiction in the nature of equitable jurisdiction to allow his claim. . . . I have come to the conclusions that I have indicated by considering all of the evidence in the case and the testimony as to the manner and method of his obtaining his claim. I have found that it was obtained fraudulently, what the law calls fraud, and I have indicated why I have disallowed this claim, because of my conclusions of fact and my conclusions of law."

Claimant's brief consists of exactly two printed pages. He gives a skeleton outline of the facts and relies on the ground that "the court erred in denying the claim, that the order was contrary to the evidence." His entire argument consumes 12 printed lines. He does not attempt to discuss or analyze any of the evidence adduced upon the hearing, or to show wherein the order was contrary to the evidence; he gives no propositions of law upon which he relies for reversal; he does not cite a single decision which may be applicable to the proceeding; and in fact he presents no legal ground why the judgment should be reversed. Where the appealing party makes no effort to point out or argue any ground for reversal of the judgment the reviewing court is not obliged to search the record in hopes that it may find some ground for reversal which is not assigned, or, if assigned, not argued. As said by the court in *Hooper v. Fox,* 364 Ill. 613, "if questions involved in a case are of sufficient importance to justify this court in deciding them they are worthy of the careful consideration of counsel presenting them. As we said in *Kelley v. Kelley,* 317 Ill. 104, 'It is the

duty of attorneys practicing in this court to present to the court the authorities supporting their views and to assist the court in reaching a correct conclusion.' "

We know of no reason why the judgment should not be affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.