NANCIE H. KESPOHL, Plaintiff, *v.* THE NORTHERN TRUST Co., Trustee, *et al.*, Defendants.—(MURAL J. WINSTIN, Petitioner-Appellant, *v.* NANCIE H. KESPOHL, Respondent-Appellee.)

(No. 53700;

First District—November 19, 1970.

*Rehearing denied December 21, 1970.*

Mural J. Winstin, *pro se.*

John J. Yowell and G. Kent Yowell, both of Chicago, (Yowell & Yowell, of counsel,) for appellee.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

On a previous appeal, *Kespohl v. The Northern Trust Company,* 93 Ill.App.2d 211, 236 N.E.2d 268, we sustained the trial court in its holding that Mural Winstin had a valid attorney's lien for legal services rendered under a contingent fee contract with the respondent Nancie Kespohl. Winstin then filed a petition in the trial court seeking payment thereof and upon hearing the court entered judgment for the petitioner in the sum of $19,341.78. The present appeal stems from the mutual dissatisfaction of the parties with the judgment entered by the trial court. Petitioner contends that the court should have allowed interest on the amount due him under the contract. Respondent in a cross-appeal contends that the trial court erred in computing the fee to which Winstin is entitled under the contract and that this court should disallow any recovery by Winstin beyond the amounts he has already received. The cross-appeal also urges this court to exercise what the respondent terms our inherent jurisdiction to reconsider our holding on the prior appeal.

The contract in question provided that Nancie Kespohl would pay her attorneys Albert Long, Elmer Leesman and Mural Winstin for legal services rendered a set percentage (45%) of the value of any improvement effected in her estate, right or interest in th substance of a trust fund established by her deceased husband Julius Kespohl. Any increase in the value of her interest attributable to any assignment or release of her share in the trust was also to be divided on the same basis. At the time the contract was executed Nancie was a beneficiary of the trust to the extent of 6/10th of 1/40th part thereof. As a result of legal proceedings instituted by her, the trial court entered an order on May 6, 1964,

declaring Nancie to be the lawful wife of the settlor, nullifying the trust agreement as to her and directing The Northern Trust Company, as trustee, to pay her one-half of the principal and interest in the trust. On July 6, 1964, a settlement agreement was executed which provided that The Northern Trust Company would pay Nancie Kespohl, after disbursements for expenses, one-half of the trust fund together with one-half of the accumulated interest thereon and one-half of any tax refunds. The following day Winstin served notice of his lien and made a demand for payment pursuant to the contract on both The Northern Trust Company and Nancie Kespohl. On May 18, 1967, the trustee received the portion of the estate tax refund amounting to $49,796.42 which accrued to the interest of Nancie Kespohl under the terms of the settlement agreement.

■■ In this appeal the petitioner based his claim for interest on two statutory grounds: (1) that interest is allowed by law on a written contract, and (2) that the respondent has been guilty of unreasonable and vexatious delay. (Ill. Rev. Stat. (1969), ch. 74, par. 2.) The record reveals however that in his argument in the trial court the petitioner relied exclusively on respondent's alleged unreasonable and vexatious delay as the basis for his right to interest. It is firmly established that parties are restricted on appeal to the theory on which the case was tried in the court below. (*Women's Athletic Club of Chicago v. Hulman*, 31 Ill.2d 449, 202 N.E.2d 528; *Benson v. Isaacs*, 22 Ill.2d 606, 177 N.E.2d 209; *Taylor v. Hughes*, 17 Ill.App.2d 138, 149 N.E.2d 393.) We must therefore restrict our examination of this point to petitioner's contention that the respondent was guilty of unreasonable and vexatious delay.

The contingent fee contract was executed by the parties on June 3, 1955. Under its terms the respondent was to pay to her attorneys Albert Long, Elmer Leesman and the petitioner Mural Winstin 45% of the value of any improvement in her share of a trust fund established by Julius Kespohl. Leesman died in 1959 and thereafter Winstin and Long continued to represent the respondent. Their efforts culminated in the court order of May 6, 1964, which declared Nancie to be the lawful wife and widow of Julius Kespohl and which substantially increased her interest in the trust fund. Winstin then filed a petition with the Chief Justice of the Superior Court to determine the compensation due the attorneys pursuant to the fee contract, which provided for the submission of such disputes and stated that the decision of the Chief Justice was to be final and not appealable. Pursuant to a stipulation between the parties the petition was heard by Judge Daniel Covelli of the Circuit Court. On May 25, 1965, the judge entered an order requiring the respondent to pay 22½% to Winstin and 22½% to the estate of Albert Long, who had died shortly after the respondent's interest in the trust fund was estab-

lished. The order also provided for the payment of $1500 each by Long and Winstin to the widow of Elmer Leesman. Respondent failed to comply with the order and Winstin thereupon filed a petition in the Circuit Court, seeking enforcement of his attorney's lien and the division of fees as ordered by Judge Covelli. Respondent contended that the contingent fee contract upon which Winstin relied had been terminated by the death of Leesman and that the surviving attorneys were only entitled to be paid the reasonable value of their services. Summary judgment was entered on the petition in favor of Winstin. The respondent appealed and in *Kespohl v. The Northern Trust Co.,* 93 Ill.App.2d 211, 236 N.E.2d 268, we affirmed the decision of the trial court. Petition for rehearing was denied by this court and leave to appeal was denied by the Supreme Court of Illinois on September 23, 1968. Following that decision Winstin filed a petition in the Circuit Court for enforcement of his attorney's lien in the sum of $24,757.99. The court disallowed his claim for interest based on unreasonable and vexatious delay and entered judgment for $19,341.78.

■■■ It has been consistently held that in order to collect interest on a theory of unreasonable and vexatious delay, the evidence must show that the debtor had thrown obstacles in the way of collection or by some circumvention or management of his own had induced the creditor to delay taking proceedings to collect the debt longer than he would have otherwise done. (*Hitt v. Allen,* 13 Ill. 592; *Whitemore v. People,* 227 Ill. 453, 81 N.E. 427; *Woodruff v. City of Chicago,* 394 Ill. 542, 69 N.E.2d 287.) Merely filing an appearance and conducting a defense to a lawsuit however does not constitute such delay. (*Lewis v. West Side Trust & Sav. Bk.,* 376 Ill. 23, 32 N.E.2d 907; *Hillmer v. Chicago Bk. of Commerce,* 349 Ill.App. 510, 111 N.E.2d 194.) In *Aldrich v. Dunham,* 16 Ill. 403, the court said (p. 404): "To appear and defend a suit is a right which cannot be construed into unreasonable and vexatious delay of payment without impairing the right itself." Where therefore the delay in payment is the result of litigation, the petitioner must establish contrivance on the part of the litigant which approximates actual fraud. (*Cooper v. Brogni,* 50 Ill.App.2d 70, 199 N.E.2d 619; *Firemen's Ins. Co. v. Newell,* 10 Ill.App.2d 371, 135 N.E.2d 116.) While it is true that due to the tenacious defense interposed by the respondent, the petitioner has been compelled to litigate his claim continually for more than five years, we cannot conclude on the basis of the record before us that the respondent's conduct was fraudulent or approximated fraud. The trial court properly refused to allow petitioner's claim for interest.

■■ Respondent in her cross-appeal contends that Winstin is not entitled to any portion of the refund allowed on the estate tax. $11,204.19

of the trial court's award is attributable to that refund. Respondent argues that Winstin made no claim to such refund on the prior appeal and that the trial court erred in not confining itself exclusively to the calculations which appear in that opinion. The prior appeal was from an order entered on January 5, 1966, directing the respondent to pay Winstin 22½% of any improvement in her estate derived from her husband's trust. The amounts which appear in the record in that case were taken from an account submitted by the trustee, reflecting the value of Nancie Kespohl's interest as of December 15, 1965. It was also revealed that a tax refund was anticipated, the exact amount of which was then unknown. That refund was not received by the trustee until May 18, 1967, while the earlier appeal was still pending before this court. The only issue decided by the prior decision was that Winstin was entitled to an attorney's lien and had properly proceeded to enforce that lien. Respondent's right to the tax refund is principally the result of the order entered on May 6, 1964, declaring her to be the lawful wife and widow of Julius Kespohl. The value of her right to receive the tax refund is part of the overall improvement in her estate attributable to petitioner's efforts and the trial court did not err in concluding that petitioner is entitled under his contract to a percentage of that refund.

■■ Respondent urges this court to exercise its inherent jurisdiction over attorneys' fees and to disallow any recovery by the petitioner beyond the payment he has already received. Pursuant to agreement of the parties, the matter was submitted to Judge Covelli, who ordered the respondent to pay petitioner 22½% of the value of the improvement in her estate. The record does not support the charge that the amount awarded was excessive.

Finally respondent urges us to overrule our decision in the earlier appeal. To that end she set forth in her brief selected excerpts from her petition for rehearing on the prior appeal, apparently on the assumption that they had not been given the weight they deserved. The Supreme Court of Illinois denied leave to appeal from our prior decision on September 23, 1968, (39 Ill.2d 627). We have again examined the points there made and it is our conclusion that the passage of time has failed to render them persuasive.

Judgment affirmed.

DEMPSEY, P. J., and McNAMARA, J., concur.